PER CURIAM.
The sole issue raised in the instant case is whether the trial court erred in deviating from the Department of Juvenile Justice’s (DJJ) recommended commitment level. We affirm.
The twelve-year-old appellant pled guilty to the lesser included offense of attempted sexual battery, and the court adjudicated him delinquent. Contrary to DJJ’s recommendation, however, the court committed him to the high risk restrictiveness level. Appellant argues on appeal, as he did below, that the court lacked authority to order placement at the high-risk restrictiveness level because no programs were available in which appellant could be placed and the court is statutorily prohibited by section 39.0583, Florida Statutes (Supp.1996), from placing a child into a program the court knows does not exist.
Appellant’s argument fails for two reasons. First, section 39.0583 is inapplicable to the case at bar because that statute is specific to children placed in an intensive residential treatment program for offenders under age thirteen pursuant to section 39.0582. As the trial court correctly pointed out, appellant was neither found eligible for nor did the court place him in this program. Second, and more importantly, section 39.052(4)(e)3., Florida Statutes (Supp.1996), expressly provides that
[t]he court shall commit the child to the department at the restrictiveness level identified or may order placement at a different restrictiveness level. The court shall state for the record the reasons which establish by a preponderance of the evidence why the court is disregarding the assessment of the child and the restrictiveness level recommended by the department. And any party may appeal the court’s findings resulting in a modified level of restrictiveness pursuant to this sub-paragraph.
The court’s duty to impose a restrictiveness level and its discretion in regard to this duty are circumscribed by this statute, and there is no mention of court power in regard to actual program placement. In fact HRS, DJJ’s predecessor agency, zealously guarded its powers of program placement and expenditure of its funds under Chapter 39 from incursion and direction by the courts. In Department of Health and Rehabilitative Services v. State, 616 So.2d 91, 93 (Fla. 5th DCA 1993), for example, the district court recounted several cases upholding the agency’s power in this regard and then held in accordance with HRS’ argument that section 39.052(3) “limits juvenile judges to determining the appropriate restrictiveness level and allows HRS the option to place a child in any program at that restrictiveness level.”
Accordingly, while we appreciate the dilemma posed by DJJ’s not having a program available for a twelve-year-old committed to a high-risk restrictiveness level, we also recognize that the court acted complete *132 ly within its authority when it understandably assigned this juvenile to the high-risk restrictiveness level. To say that there should be such a program if there is not, however, is easy when writing with the judicial pen. Likewise, it is clear that DJJ is statutorily obligated to place the juvenile in a program within that level. The proverbial situation of being between a rock and a hard place comes to mind, and neither the trial judge nor DJJ deserves to be there. Their extrication, however, is properly a matter for the legislature to engineer. While we realize that the decision is not ours to make, in this instance we trust that the DJJ will place the juvenile involved here in the most restrictive program in its inventory appropriate under the circumstances.
MINER and LAWRENCE, JJ., concur.
ALLEN, J., concurs in result only.