721 So.2d 440 (1998)
J.L.O., a child, Appellant,
v.
STATE of Florida, Appellee.
No. 97-3456
District Court of Appeal of Florida, Fifth District.
December 4, 1998.
*441 James B. Gibson, Public Defender, and Leonard R. Ross, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Maximillian J. Changus, Assistant Attorney General, Daytona Beach, for Appellee.
ORFINGER, M., Senior Judge.
J.L.O. appeals from an order of disposition finding her delinquent and committing her to a level 8 residential program, a departure from the Department of Juvenile Justice (DJJ) recommendation of a level 4 commitment. She contends that the only reason for departure was the unavailability of a level 4 (or even a level 6) residential program, which is an insufficient reason for departure.
J.L.O. is a 16 year old girl, who was residing with her adoptive parents and two siblings. She did not get along with her mother, and in July 1997 was charged with assaulting her. This resulted in detention and an order for community control. Later that month J.L.O. was charged with domestic violence, battery on her mother. She was again placed on community control. Among the requirements of her community control was that she reside at home and attend school regularly. She failed in both respects. The following month she was picked up for violation of her community control because she had run away from home. She was found to be in contempt of court, placed in secure detention for five days, then sent home. A psychological report was ordered.
In September, 1997, the state filed a petition for revocation of her community control on the ground that she had again violated its terms by running away from home, alleging that she refused to live at home. After a hearing, she was again found in direct contempt of court and placed in secure detention for five days. On September 16, with advice of counsel, she entered a plea of guilty to violation of community control, and was released to her parents (who indicated that they did not want her at home) pending disposition.
The psychological report submitted to the court indicated that J.L.O. was "a young woman with a very troubled history whose recent violence appears to (be) the acting-out of long internalized rage." The examiner recommended that there be no attempt to return her to the home of her adoptive family.
At the disposition hearing the court learned that J.L.O. had run away from home again, and had been living with an 18 year old boyfriend with whom she was sexually active. When the trial judge was advised that there was no current availability in either level 4 or level 6 residential settings, he was obviously frustrated and clearly believed that he could not, under the circumstances release this child to her parents, when the child had made it clear that she refused to live at home and her parents had told the court that they did not want her at home. The DJJ report acknowledged J.L.O.'s refusal to live at home and her parents' fear of further violence.
In spite of his frustration, the trial court went through an extensive dialogue with J.L.O., trying to get her to understand that her current lifestyle could lead her into much greater difficulties, especially if she became pregnant. While the court may have concurred with the level 4 recommendation had a facility been available, it is clear that the departure was in part, at least, based on the court's strong feeling that commitment was required and that release was not a viable option.[1]
*442 While it is true that lower risk programs were not available, the court had good reason to reject the idea of releasing the child. Thus, other valid reasons for departure are supported by the record. It was not solely the unavailability of the recommended program that led to the higher placement, but the child's need for a secure facility as evidenced by her prior history in the juvenile system. Section 39.01(59)(d), Florida Statutes (Supp.1996), provides that: "High-Risk ResidentialYouth assessed and classified for this level of placement require close supervision in a structured residential setting that provides 24-hour-per-day secure custody, care, and supervision." Under the factual circumstances of this case, the court was in a better position than are we in determining the most appropriate placement, and did not abuse its discretion in rejecting the department's recommendation. When the department recommends an unavailable program, the juvenile court should be accorded a wide latitude of discretion in determining the proper placement. The order of disposition is affirmed.
AFFIRMED.
W. SHARP, J., concurs and concurs specially with opinion.
GRIFFIN, C.J., dissents with opinion.
W. SHARP, J., concurring and concurring specially.
I suppose that one alternative theoretically available to the trial judge in this case would have been to commit the juvenile to the recommended level 4 or 6 and hope that the Department of Juvenile Justice would do the best it could to find an appropriate program. R.L.B. v. State, 693 So.2d 130 (Fla. 1st DCA 1997). But since it did not do so, the question for us on appeal is did the court rely upon appropriate considerations in making the level 8 placement, and were they supported by a preponderance of the evidence? § 39.052(4)(e). See Q.L.J. v. State, 714 So.2d 628 (Fla. 1st DCA 1998). As outlined in Jude Orfinger's opinion, this juvenile had committed two acts of domestic violence and had violated her community control numerous times and in many ways. There were grounds to support the trial judge's decision that he could not return the juvenile to her parents' home and that her attitude of resisting "everything that has happened so far," coupled with her recent history of acts of violence, required immediate and serious attention. I agree this case should be affirmed.
GRIFFIN, C.J., dissenting.
I respectfully dissent. The Florida Department of Juvenile Justice ["DJJ"] predispositional report had recommended for J.L.O. a restrictiveness level of four (low risk residential), with court ordered counseling for the parents, drug testing and a treatment plan. The DJJ representative orally advised *443 the court: "They're recommending level four residential. I believe they are targeting the C.A.T.S. program which is a pretty good program for girls 12 to 16, no prior commitments, etc."
The court inquired about the waiting period and was informed that there could be a two to three month delay because there was no level four placement immediately available. The court then announced its reason for departing from the DJJ recommended placement:
Well, based upon the waiting period before a Level 4 or a Level 6 program is available, that is not a reasonable alternative. Because the moment that this Court places this child either in Level 4 or Level 6, there will be a legal requirement that she be released. If she is released before entering a program, she is likely, based upon what has been placed on the record here, to run away, not to abide by the rules pending commitment. So at this point, the only alternative that I have is to depart upwards to a Level 8 commitment.
I'll go ahead and enter an adjudication, as well as a finding of delinquency on 97-6602, finding that the violation of community control was in a substantial, material, and an intentional manner by failure to reside on a regular basis at home with her parents, refusing to live at home with her parents, as she has indicated here time and time again.
In 97-5844, the Court enters a finding of delinquency, an adjudication of delinquency. This is the basis for the violation of community control; the assault, 97-5844. The court will voice no objection to a Level 4 or a Level 6 program, if one is found prior to the Level 8 becoming available....
Although the lower court's plain purpose was to protect this child by preventing her from running away from home while awaiting level four placement, this "reason" for altering the placement to level eight is not permissible. The majority, by searching the record for other grounds for departure, implicitly agrees this is so. I can only consider what the court explained was its reason that because level four was not immediately available, he would place her at the first level that was immediately availablelevel eight. The question that is squarely presented by this seemingly clear explication of the trial judge's reason for departure is whether the court is empowered to alter the Department of Juvenile Justice's recommended placement solely for the reason that there is no placement at that level then available. I can find no authority in the statute to do so. Though the lower court has satisfied the statutory requirement of stating the reason for departing from the DJJ recommendation, common sense dictates that not just any reason will do. See Q.L.J. v. State, 714 So.2d 628, 23 Fla. Law Weekly D1781 (Fla. 1st DCA 1998). The reason must have reference to the characteristics of the restrictiveness level vis-a-vis the needs of the child. See § 985.03(45)(1997).
Section 985.215(10)(a)(I) (1997)[1] places strict limitations on how long a low or moderate risk adjudicated child can be held in detention. It is plainly contrary to the statutory scheme to say that even though a level four child cannot be placed in detention, the child can be committed to level eight in order to accomplish confinement. The statute also makes no provision for "temporary" commitments, so this level eight commitment does not even terminate when a level four place becomes available. It is wrong to place a level-four-appropriate child with no prior commitment into a level eight facility with level-eight-appropriate inmates. Also, this level four child will be taking up the place needed for a level eight child. Besides, if the lack of availability were a sufficient reason to change restrictiveness level, level eight children could equally be committed to level four. The statutory scheme plainly does not contemplate that the placement decision be based on availability. The courts can only apply the law, we cannot reinvent it. If the state will not provide a level four facility for appellant, she must go home. She cannot be sent to level eight.
NOTES
[1] Excerpts of the disposition hearing follow:

* * * * * *
THE COURT: Recommendations.
MR. LEFEVERS: (For DJJ) They're recommending Level 4 residential. I believe they're targeting the CATS program, which is a pretty good program for girls 12 to 16, no prior commitments, etcetera.
MS. LOMBARDO: (Defense Counsel) Judge, [J.L.O.] wanted me to let the Court know that she doesn't really agree with the recommendations. She doesn't ...
THE COURT: What would she like, a Level 8?
THE CHILD: No.
MS. LOMBARDO: I asked her what she would like, but she didn't ...
THE COURT: You're on the way. You are on the way. You know what, [J.L.O.]? This could have been resolved long ago with community control and you getting along with everybody and living happily ever after. But you know what? You're beingyou're earning this. You've earned this because of your hard head.
THE CHILD: (Indiscernible words)
THE COURT: Okay. I'm willing to go ahead and commit you to even a higher level, if that needs to be. What's it going to take, [J.L.O.]? I have a feeling you like coming to court.
* * * * * *
But do you realize that with what you're telling me, the recommendation for level 4 residential is not an appropriate one? The moment I release you, you are basically going to I am setting you up for failure.
* * * * * *
Well, based upon the waiting period before a Level 4 or a Level 6 program is available, that is not a reasonable alternative. Because the moment that this court places this child either in Level 4 or Level 6, there will be a legal requirement that she be released. If she is released before entering a program, she is likely, based upon what has been placed on the record here, to run away not to abide by the rules pending commitment. So at this point, the only alternative that I have is to depart upwards to a Level 8 commitment.
* * * * * *
I'm aware of the family situation. We have had this case come up, and she has basically been absolutely resistant to anything and everything that has happened so far. That's another good reason why a Level 8 secure program is required.
[1] See also 39.044(10)(a)(1995).